# UNITED STATES DISTRICT COURT

# SOUTHEN DISTRICT OF NEW YORK

| | |
|---|---|
| JAIME TORRES AND RAKESH KALRA, | Case No.: 1:20-cv-10210 |
| individually and on behalf of all others similarly situated, | |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| vs. | |
| THE CITY OF NEW YORK, ACTING THROUGH THE NEW YORK CITY POLICE DEPARTMENT AND NEW YORK CITY DEPARTMENT OF FINANCE; MARY GOTSOPOULIS; JEFFREY SHEAR; AND JANE AND JOHN DOES 1-10, | |
| Defendants | |

Plaintiffs Jaime Torres and Rakesh Kalra, by and through counsel, bring this Class Action Complaint on behalf of themselves and all others similarly situated against Defendants the City of New York ("NYC"), acting through the NYC Department of Finance ("DOF") and NYC Police Department ("NYPD"); Mary Gotsopoulis, Chief Administrative Law Judge of the New York City Department of Finance Parking Violations Bureau; Jeffrey Shear, Deputy Commissioner of the New York City Department of Finance Treasury & Payment Services; and Jane and John Does 1-10, all in their official capacities, alleging upon information and belief, except as to facts and matters that relate to Plaintiffs, which are alleged upon knowledge, as follows:

1.     Since at least 2010, acting pursuant to municipal custom and under color of state law, the Defendants have intentionally and illegally collected millions of dollars in revenue by

issuing multiple parking tickets to the same vehicle for the same violation at the same location on the same day.

2.      This duplicative ticketing practice violates drivers' civil rights, NYC's traffic laws, rules, and regulations, and even NYPD's own Patrol Guide, which directs NYPD to "Issue only one summons for the same violation, at the same location, on the same day."[1]

3.      Defendants regularly treat drivers who have the means and time to dispute these illegal duplicative tickets in the same way they treat drivers without such means.  "Hearings" on illegal duplicative parking tickets actually occur at NYC's Department of Finance, where biased Administrative Law Judges ("DOF Judges"), who are actually just Department of Finance contract workers, uphold and order drivers to pay illegal duplicative tickets with alarming frequency.

4.      Accordingly, this lawsuit seeks an order enjoining further issuance or enforcement of illegal duplicative tickets and the return of illegal duplicative fines and penalties that Defendants have extracted from Plaintiffs and other members of the class they seek to represent.

## JURISDICTION AND VENUE

5.      This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this Court has original jurisdiction over all civil actions arising under the laws of the United States, including 42 U.S.C. § 1983.  The Court also has jurisdiction over this action under 28 U.S.C. § 1343(a)(1)-(4), which confers original subject matter jurisdiction in this Court over actions involving the alleged deprivation of civil rights.

6.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same common nucleus of operative facts as Plaintiffs' federal claims and form part of the same case or controversy.

---

[1] Ex. 1, NYPD Patrol Guide at 2 (Parking Summonses – General Procedure No. 209-07).

7.    The Court has jurisdiction over Plaintiffs' claim for declaratory judgment and declaratory relief under 28 U.S.C. §§ 2201 and 2202, as implemented by Rule 57 of the Federal Rules of Civil Procedure.

8.    Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## IDENTIFICATION OF PARTIES

### *Plaintiff Jaime Torres*

9.    Plaintiff Jaime Torres ("Mr. Torres") is a resident of this District who received and paid for two no standing parking tickets that were written twelve minutes apart, alleging the same violation, at the same location, on the same day.

10.    Mr. Torres is a teacher who is and was at all relevant times authorized to park in the Department of Education parking zone where he received the aforementioned parking tickets, which bear Summons Numbers 8733733624 and 8786956048.[2]

11.    On November 8, 2019, the day Mr. Torres received the aforementioned parking tickets, Mr. Torres forgot to display his Department of Education parking permit on the dashboard of his vehicle.

12.    Upon receipt of the aforementioned parking tickets, Mr. Torres entered a Not Guilty plea, explaining he was a teacher authorized to park in the Department of Education parking zone at issue on November 8, 2019, enclosing a picture of the Department of Education permit that authorizes him to park in the location where he received both of the aforementioned tickets.

13.    On November 26, 2019, DOF Judge Ballerini issued a Decision and Order that acknowledged Mr. Torres had submitted "photo documentation" establishing that his vehicle was

---

[2] Ex. 2, Torres Summons Nos. 8733733624 and 8786956048.

authorized to park where it was ticketed, yet continued to state Mr. Torres's authorized vehicle defense "does not excuse this violation."[3]

14.     The full text of Judge Ballerini's November 26, 2019 Decision and Order, which provides no indication as to what law Mr. Torres's authorized parking violated, states:

> The respondent has been charged with violating Traffic Rule 4-08(c)(4) by standing or parking a vehicle where standing is prohibited except for authorized vehicles so designated by a rider attached to such posted sign. Respondent testifies "Forgot to display my parking permit." and submits photo documentation. Respondent's defense does not excuse this violation. A vehicle operator must properly display their NYC DOE permit to park in the cited zone.

15.     When Mr. Torres received DOF Judge Ballerini's November 26, 2019 Decision and Order finding him guilty, Mr. Torres returned to DOF's website to enter a Not Guilty plea on his duplicative second ticket and notify DOF that, at minimum, he certainly should not be required to pay *two* fines for *one* alleged violation.

16.     DOF's website nonetheless prohibited Mr. Torres from requesting a second hearing on his duplicative second ticket or allowing Mr. Torres to supplement his original basis for contesting the duplicative second ticket.

17.     Accordingly, in an effort to avoid additional fines and penalties or having his car impounded, Mr. Torres paid $95 for each of his parking tickets and an additional $10 penalty imposed upon his second ticket while Mr. Torres unsuccessfully attempted to request a second hearing.

18.     In an attempt to obtain a refund for the duplicative $95 fine and additional $10 penalty that Mr. Torres was forced to pay for his duplicative second ticket, on August 15, 2020, Mr. Torres filed an Appeal Application with DOF, informing DOF of the second ticket he had

---

[3] Ex. 3, Nov. 26, 2019 Decision and Order upholding Torres Summons No. 8786956048.

received within a twelve minute period for the same violation, Summons Number 8786956048, and informing DOF that it was "duplicative of another ticket issued for the same violation on the same day (number 8733733624)."

19.     Notwithstanding Mr. Torres' clear and concise explanation of this overwhelming basis for seeking a review of DOF Judge Ballerini's Decision and Order, on August 21, 2020, DOF responded to Mr. Torres' appeal with a generic form letter notifying him that DOF "CANNOT PROCESS YOUR APPEAL APPLICATION BECAUSE: . . . APPEAL APPLICATION WAS NOT SUBMITTED WITHIN 30 DAYS OF THE GUILTY DECISION."

20.     DOF's August 21, 2020 denial of Mr. Torres' Appeal Application contains no indication as to who denied Mr. Torres' appeal, aside from the initials "SM," which appear at the end of DOF's generic August 21, 2020 form letter.

### *Plaintiff Rakesh Kalra*

21.     Plaintiff Rakesh Kalra ("Mr. Kalra") received and paid for two parking tickets written for the same violation, at the same location, on the same day.

22.     Mr. Kalra parked in this District on Sunday, November 24, 2019 and received two parking tickets, both alleging he had parked in a bus stop.[4]

23.     On November 26, 2019, Mr. Kalra summitted a detailed Hearing Request to DOF regarding the duplicative second bus stop ticket that he received on November 24, 2019, Summons Number 1463347418.

24.     Mr. Kalra's November 26, 2019 Hearing Request informed DOF of his belief that "parking was permitted" on Sundays at the spot he parked and Mr. Kalra further informed DOF

---

[4] Ex. 4, Kalra Summons Nos. 1463347418 and 8757483619.

that he had "received 2 tickets for the same offence," specifically informing DOF of the "Other ticket # 875748361-9" in support of his duplicative ticketing defense.

25.    On December 18, 2019, DOF Judge Jeanette Antico issued a Decision and Order finding Mr. Kalra guilty of the duplicative second bus stop ticket that he received, Summons Number 1463347418.[5]

26.    DOF Judge Jeanette Antico's December 18, 2019 Decision and Order concluded Mr. Kalra's permitted parking defense was "not persuasive," without providing any explanation, and continued to state Mr. Kalra's "summonses were not issued within three hours of each other and are therefore not considered repeat summonses," again without explanation or citation to any authority that would permit the issuance and enforcement of two identical tickets issued less than five hours apart for one alleged violation.  DOF Judge Antico's Decision and Order ultimately demanded a second $115.00 payment from Mr. Kalra.[6]

27.    In an effort to avoid additional fines and penalties or having his car impounded, Mr. Kalra paid $115 for each of his parking tickets, i.e., $230, and an additional $10 penalty levied by DOF while Mr. Kalra unsuccessfully attempted to obtain dismissal of his duplicative ticket.

28.    On January 9, 2020, Mr. Kalra drafted and submitted an Appeal Application for Summons Number 1463347418, indicating DOF Judge Jeanette Antico's Decision and Order should be reviewed because Mr. Kalra "Received 2 Tkts for the same offense at the same location (Tkt 875748361-9 enclosed)" and enclosed demonstratives that explained and depicted the location of his vehicle and signs that indicated parking was permitted in that location at that time.

29.    On January 30, 2020, DOF issued a handwritten Appeals Board Decision indicating Summons Number 1463347418 had been "Affirmed."

---

[5] Ex. 5, Dec. 18, 2019 Decision and Order upholding Kalra Summons No. 1463347418.
[6] Ex. 6, Jan. 9, 2020 Kalra Appeal of Summons No. 1463347418.

30.    The Appeals Board's entire January 30, 2020 Decision merely states "Upon review the Appeals Board finds no error of fact or law. Decision affirmed."[7]

31.    DOF's January 30, 2020 Appeals Board Decision failed to acknowledge, discuss, or respond to any aspect of Mr. Kalra's duplicative ticketing defense or the evidence he carefully prepared and submitted in support of his permitted parking defense.

32.    DOF's January 30, 2020 Appeals Board Decision was signed by three unidentified individuals, presumably DOF Judges, all "IN FAVOR OF THE MAJORITY OPINION." Although all three signatures are illegible, the first and second signatures are respectively accompanied by "ID#" 2199 and 2108.

### Defendant the City of New York

33.    Defendant NYC is a duly constituted municipal entity created and authorized under the laws of the State of New York which, through a Mayor and Council and various departments, bureaus and agencies, conducts the business and runs the affairs of City government.

34.    Defendant NYC is a person for purposes of 42 U.S.C. § 1983 and, at all times relevant to this action, exercised governmental authority in this District.

35.    The New York City Police Department ("NYPD") Transportation Bureau's Traffic Enforcement District ("NYPD Traffic Enforcement") is the NYPD unit primarily responsible for the enforcement of laws and regulations involving moving and parked vehicles on behalf of Defendant NYC.[8]

---

[7] Ex. 7, Jan. 30, 2020 DOF Appeals Board Decision upholding Kalra Summons No. 1463347418.
[8] https://www1.nyc.gov/site/nypd/bureaus/transit-housing/transportation.page (last accessed Dec. 2, 2020).

36.     NYPD Traffic Enforcement employs approximately 3,300 civilian Traffic Enforcement Agents ("TEAs") (up from approximately 1,700 in 2001) who issue several million parking tickets per year pursuant to 34 RCNY § 4-08.[9]

37.     Although NYPD TEAs write most of the illegal duplicative parking tickets issued in NYC, other non-NYPD NYC entities, such as the Fire Department, also write parking tickets, including illegal duplicative tickets.[10]     Accordingly, this Complaint's allegations of illegal duplicative ticketing by NYC include, but are not limited to, duplicative tickets issued by NYPD.

38.     Copies of the parking tickets issued by various NYC agencies are sent to DOF for recordkeeping and collections.

39.     DOF is the NYC department responsible for collecting billions of dollars in annual tax and other revenue, including several hundred million dollars in annual fines and penalties for parking violations.

40.     Decades ago, NYC shifted the adjudication of disputed parking tickets from NYC's courts to DOF.

41.     The DOF Adjudication Division handles the adjudication of disputed parking tickets.

42.     With respect to the adjudication of parking tickets, DOF generally refers to its Adjudication Division as the Parking Violations Bureau.

43.     The Parking Violations Bureau is both controlled by DOF and part of DOF.

---

[9] https://www1.nyc.gov/site/nypd/bureaus/transit-housing/transportation.page (last accessed Dec. 2, 2020).
[10] *See* 19 RCNY § 39-01 Definition for "Notice of violation" (listing dozens of NYC entities eligible to write parking tickets, such as the Fire Department).

*Individual Defendants*

44.     Jeffrey Shear, Deputy Commissioner of the New York City Department of Finance Treasury & Payment Services, is responsible for overseeing DOF's Collections and Parking Summons Adjudication divisions.

45.     Jeffrey Shear is identified in NYC's Policymaker List as an official with substantial policymaking authority for NYC and DOF.[11]

46.     Mary Gotsopoulis is DOF's Chief Administrative Law Judge ("Chief Judge Gotsopoulis") who acts through the DOF Adjudications Division and, at all relevant times, was and is responsible for overseeing the adjudication of parking tickets by DOF.

47.     Chief Judge Gotsopoulis reports to Jeffrey Shear.

48.     Chief Judge Gotsopoulis is identified in NYC's Policymaker List as an official with substantial policymaking authority for NYC and the DOF.

49.     For more than ten years, Chief Judge Gotsopoulis has been identified in NYC's Policymaker List as the person with substantial policymaking authority for the DOF Adjudications Division.[12]

## FACTUAL ALLEGATIONS

50.     Defendants issue millions of dollars of illegal duplicative tickets annually with actual knowledge that such tickets are duplicative and/or while remaining willfully blind to duplicative tickets already displayed on a vehicle.

---

[11] https://www1.nyc.gov/site/coib/public-documents/policymaker-lists.page (2013-2020 NYC Policymaker Lists, last accessed Oct. 1, 2020).

[12] https://www1.nyc.gov/site/coib/public-documents/policymaker-lists.page;  http://nyc.gov/html/conflicts/downloads/pdf2/Policymakers/policymakers_2010.pdf (NYC Policymaker Lists for years 2010-2020, last accessed Dec. 2, 2020).

51.    Defendants knowingly ignore and/or decline to use commercially available electronic ticketing devices that automatically detect and prevent the issuance of illegal duplicative tickets by default in real time.

52.    Defendants are required to comply with and abide by all traffic laws, rules, and regulations and to authorize the issuance of tickets only as permitted by those laws, rules, and regulations and not in contravention of those laws, rules, and regulations.

53.    At all relevant times, Defendants acted through the departments, bureaus, agencies, and/or individuals named herein to commit the acts alleged throughout this Complaint and are responsible for those acts.

54.    Drivers who refuse to pay illegal duplicative parking tickets face various forms of illegal retaliation by Defendants, including without limitation penalties, interest, vehicle booting, vehicle impounding, and/or having their vehicle sold at Defendants' regular impounded vehicle auctions.

55.    The number of vehicles seized as part of Defendants' parking ticket enforcement efforts underscores the non-nominal nature of this property deprivation tactic. According to Defendant Jeffrey Shear, DOF's "Scofflaw Enforcement Program seized 118,000 vehicles" in calendar year 2018 alone.[13]

56.    Defendants threaten to and do utilize a phalanx of illegal retaliation, property deprivation, and freedom of movement deprivation tactics to compel payment even for illegal duplicative tickets that initially amount to less than $350, the general threshold for vehicle booting and towing, by continually adding additional penalties and interest to unpaid tickets.[14]

---

[13] Ex. 11, Apr. 29, 2019 testimony of Defendant Jeffrey Shear at 5.

[14] "You can be booted for owing the city more than $350 in parking . . . violation tickets that are in judgment. . . . If you do not pay the parking . . . violation judgment debt and related fees within two business days of being booted, then your vehicle may be towed. A ticket becomes 'in judgment' when approximately 100 days have passed . . . .

57.    To the extent Plaintiffs and other members of the class they seek to represent pleaded guilty to and/or paid for illegal duplicative tickets, they did so to avoid illegal retaliation by Defendants and/or would not have done so but for Defendants' misrepresentations and/or omissions.

### Duplicative Ticketing is Illegal

58.    NYC Administrative Code authorizes Defendants to impose fines "for parking violations, provided however, that monetary **penalties shall not exceed fifty dollars for each parking violation**," except "where stopping or standing is prohibited," in which case a $100 limit applies."[15]

59.    NYC Traffic Rules and Regulations define "Parking" as "the standing of a vehicle, whether occupied or not, **otherwise than temporarily**."[16]  This confirms a parking violation occurs when a motionless vehicle remains in one location for an extended period and also confirms that each officer's observation of an existing parking violation does not create a new one or otherwise abrogate the "penalties shall not exceed" language in NYCAC § 19-203.

---

Once that happens, a judgment is docketed with the Civil Court of the City of New York for your debt and the City can take enforcement action against you such as towing or booting your vehicle. **If your ticket is in judgment, the total amount you owe includes the fine, penalties and interest that have been added for nonpayment. . . . Vehicles are typically sold after two weeks of being impounded, but your vehicle could be sold earlier."** https://www1.nyc.gov/site/finance/vehicles/services-booting_faq.page (emphasis added) (Booting Frequently Asked Questions 1-2 and 15, last accessed Nov. 4, 2020); "Your New York State vehicle registration can be deferred or suspended if you have: 3 or more outstanding parking . . . violations in any combination in judgment within an 18-month period." https://portal.311.nyc.gov/article/?kanumber=KA-02144 (NYC Parking Ticket or Camera Violation Clearance information, last accessed Nov. 4, 2020).

[15] Chapter 2 of the NYC Administrative Code ("NYCAC") § 19-203.  This section also authorizes penalties up to $150 for handicapped parking violations, which are rarely issued in NYC.  19 RCNY § 39-05 contains NYC's schedule of fines, which frequently imposes the maximum permitted **$50** (parking) and **$100** (stopping and standing) fines, which are respectively levied at $65 and $115 due to N.Y. Veh. & Traf. Law § 1809-A, which requires cities having a population of 100,000 or more to impose a **$15 surcharge** on parking violations.

[16] 34 RCNY § 4-01, Words and Phrases Defined.

60.     The meaning and intent of NYC's Administrative Code and Traffic Rules are also summarized in NYPD's Patrol Guide, which directs NYPD to "Issue only one summons for the same violation, at the same location, on the same day."[17]

61.     Defendants' sustained failure to follow the law or the ticket issuance procedures set forth in NYPD's Patrol Guide is exacerbated by the fact that DOF does not even attempt to host an impartial tribunal or provide anything resembling due process.

### DOF Hires Biased Judges to Enforce Illegal Tickets

62.     One tactic Defendants use to protect this corrupt revenue generating operation involves forcing drivers to dispute parking tickets at NYC's DOF, where biased DOF Administrative Law Judges regularly uphold and force drivers to pay illegal duplicative tickets of the type issued to Plaintiffs and thousands of other similarly situated members of the class Plaintiffs seek to represent.

63.     DOF's refusal to dismiss illegal duplicative tickets, even when drivers provide actual and repeated written notice, underscores the intentional nature of this long-standing practice.

64.     DOF protects this long-standing custom by paying contract attorneys to work as the DOF Judges who preside over and frequently uphold illegal duplicative tickets.

65.     These hearings occur at DOF, which identifies itself as the "Parking Violations Bureau" for this purpose.[18]

66.     This apparent attempt to rebrand DOF with a veneer of objectivity does not extend to the written decisions issued by DOF Judges, which appear on DOF letterhead.

---

[17] Ex. 1, NYPD Patrol Guide at 2 (Parking Summonses – General Procedure No. 209-07).
[18] 19 RCNY § 39-01 accurately defines the "Parking Violations Bureau" as "an administrative tribunal in the New York City Department of Finance."

67.    Drivers are naturally confused by the bias DOF Judges exhibit in upholding and ordering payment for illegal duplicative parking tickets.

68.    The bias exhibited by DOF Judges in this regard is apparent in the tortured opinions they write upholding illegal duplicative tickets, writing, *e.g.*, that duplicative ticketing is not a valid defense, or informing drivers that their duplicative ticketing defenses have been rejected because another summons remains outstanding.

69.    These predatory ticket issuance, adjudication, and collection practices, which violate the law and NYPD's own ticket issuance policies, understandably lack any citations to law or authority that would permit Defendants to engage in this type of extortion.

### *DOF Hearings are Designed to Find Drivers GUILTY*

70.    The systemic and intentional nature of DOF's bias is memorialized in multiple locations, including NYC's annual Mayor's Management Report, which "has provided a transparent and open look at the leaders who serve this city" for more than 40 years.[19]

71.    The section of that report prepared by DOF Commissioner Jacques Jiha includes a "how we performed" section regarding DOF's efforts to "[b]ill, adjudicate and collect on parking tickets."   Notably, DOF's official "Performance Indicators" for parking ticket adjudication and collection efforts repeatedly document DOF's goals of reducing the number of future "[p]arking ticket appeals granted a reversal" and reducing the number of parking tickets "that are dismissed" in the future.[20]

---

[19] 2019 NYC Mayor's Management Report at 3 of 424, https://www1.nyc.gov/assets/operations/downloads/pdf/mmr 2019/2019_mmr.pdf (last accessed Dec. 3, 2020).
[20] Department of Finance section of 2020 NYC Mayor's Management Report at 352 (indicating the "Desired Direction" of those metrics is "Down."), https://www1.nyc.gov/assets/operations/downloads/pdf/mmr2020/2020_ mmr.pdf (last accessed Dec. 3, 2020).

72.    DOF's official policy and practice of encouraging guilty verdicts on tickets that have not even been written yet speaks volumes about DOF's willingness to follow the law and provide due process.  DOF's policy and practice of pushing guilty verdicts is not limited to DOF Management Reports — multiple DOF Judges have complained they are pressured to find drivers guilty and subjected to retaliation when they fail to meet guilty quotas.

73.    A Fox 5 NY investigative report, based on interviews with four DOF Judges working under Chief Judge Gotsopoulis, describes a remarkable level of intentional and systemic bias at DOF.  One of the DOF Judges interviewed, who understandably asked not to be named, told Fox 5 NY that **"[j]ustice and fairness is not at a high level of priority"** at DOF, acknowledging **"the parking violations bureau is part of the agency that is charged with making money."[21]**  When asked about **"guilty quotas,"** a DOF Judge said "[y]ou are less willing to stick your neck out" because DOF Judges are "required to report how many tickets they decide are not guilty."  DOF Judges also reported that they are required to handle up to **70 cases per *hour*** and **"receive less work"** if they **"don't meet ticket quotas."**[22]

74.    DOF's ability to retaliate against impartial DOF Judges by reducing or eliminating their compensation is secured by DOF Judges' status as hourly contract workers with "no rights to their jobs or to redress of their grievances."[23]

75.    Defendants' systemic and intentional issuance of illegal duplicative tickets, failure to detect and administratively dismiss illegal duplicative tickets that are issued by a ministerial act, and diversion of disputed illegal duplicative tickets into DOF proceedings that fail to comport with

---

[21] Ex. 8, Fox 5 NY, *NYC Ticket Judges*, Jul. 22, 2010.
[22] Ex. 8, Fox 5 NY, *NYC Ticket Judges*, Jul. 22, 2010.
[23] Ex. 9, *Reform Needed at Parking Bureau*, N.Y.L.J., Sep. 9, 2010; DOF Judges' long-standing status as contract workers appears to an artifact of N.Y. Veh. & Traf. Law § 236(2)(d) ("hearing examiners shall not be considered employees of the city in which the administrative tribunal has been established.").

the most basic tenets of due process comprise an overwhelming volume of evidence establishing Defendants' systemic and intentional violation of federal law, state law, and the rules and regulations governing parking tickets in NYC.

76.    Any claim by Defendants in this litigation that DOF's hearings do not incentivize and exhibit actual bias would be pretextual in view of the overwhelming evidence of actual and incentivized bias cited throughout this Complaint.

### *DOF Openly Opposes Reform*

77.    DOF Judges who do want to make fair decisions despite the risk of losing their job or receiving less work face another series of DOF's constraints on their independence.  For example, DOF Judges are prohibited from removing fines like late penalties in the interest of justice.  In a 2018 City Counsel oversight hearing on the DOF Parking Violations Bureau, a widely-sponsored bill was proposed to address that very issue by granting DOF Judges "discretion to reduce or waive additional penalties" for parking violations "in the interest of justice."[24]  DOF official and Defendant Jeffrey Shear's testimony in response to that proposed amendment, recorded in the oversight hearing transcript, perfectly summarizes DOF's interest in justice: "DOF has no way to estimate the impact the bill would have on parking ticket revenue. DOF therefore, must oppose the bill."[25]

78.    Another former DOF Judge, Dennis Boshnack, has written a number of blog posts that further document the intentional and systemic nature of bias at DOF.  For example, in a 2012 posting entitled  "Reform is Still Needed at Parking Violations Bureau," he wrote that Chief Judge Gotsopoulis, a Defendant in this action, told DOF Judges they "were no longer to abate penalties"

---

[24] Ex. 10, N.Y. City Council Int. No. 1066 (introduced Aug. 8, 2018 and again on Oct. 26, 2018 before being "Laid Over" by the Committee on Finance Apr. 29, 2019).
[25] Ex. 11, Apr. 29, 2019 testimony of Defendant Jeffrey Shear at 5.

at certain parking ticket hearings, noting Chief Judge Gotsopoulis's instruction "was contrary to" 19 RCNY § 39-07(b).[26]

79.     Yet another former DOF Judge, writing anonymously for the New York Law Journal, indicated the judges ruling on parking tickets at DOF's Parking Violations Bureau know they are working for "the Department of Finance, whose overarching mission is to collect revenue for the city," and "feel that they are subject to an irreconcilable conflict: the requirement to be loyal to the agency and the duty to adjudicate disputes independently and in a fair and impartial manner."[27]

80.     The same former DOF Judge also indicated the public's inability to access DOF parking ticket hearings "makes it easy" for DOF Judges to be "loyal to the agency."[28]

81.     Defendants' 2020 city budget, which "projects $42 million in revenue from extra tickets as part of its plan to change the NYPD's budget,"[29] further underscores Defendants' commitment to manufacturing additional parking ticket revenue from violations that have not and may never occur.  This type of conduct by Defendants has and will continue to incentivize issuance and enforcement of illegal duplicative parking tickets.

82.     The intentional nature of Defendants' ongoing and intentional imposition and enforcement of improper fines and fees for parking violations is also corroborated by New York State's own December 2019 Audit of DOF's Parking Violations Operations.  That Audit Report memorializes several failures to follow the law in issuing and adjudicating parking tickets, and

---

[26] Dennis Boshnack (former DOF Judge), *Reform is Still Needed at Parking Violations Bureau*, New York Parking Ticket Blog, May 10, 2012, https://newyorkparkingticket.com/reform-parking-violations-bureau/, (noting DOF's "PVB disregards it's own parking ticket rules.").

[27] Ex. 9, *Reform Needed at Parking Bureau*, N.Y.L.J., Sep. 9, 2010.

[28] Ex. 9, *Reform Needed at Parking Bureau*, N.Y.L.J., Sep. 9, 2010.

[29] Shant Shahrigian, New York Daily News, *NYC parking tickets to increase as part of de Blasio plan to 'defund' NYPD*, Jun. 30, 2020, https://www.nydailynews.com/news/politics/ny-parking-tickets-defund-nypd-bill-de-blasio-corey-johnson-20200630-oitbahdqknauhk3jmaltzaxb4q-story.html?fbclid=IwAR1qFx2hG8sTAgu19exER5m1to-IelpTm7m5Vf-jfFiqgSCX_cPcRSx1IPY.

ultimately "found limited evidence that DOF followed the required process for obtaining default judgments against vehicle owners."[30]

83.    Defendants' duplicative ticketing practices and DOF's Adjudication Division, whose own judges admit they "don't have time to dig into cases and check the law" and "often can't be fair to motorists,"[31] constitute a walking due process violation that cannot be allowed to continue preying on drivers who park on the street, receive illegal duplicative tickets, and suffer often-irreversible financial hardship as a result.[32]

84.    In sum, drivers disputing illegal duplicative tickets receive an unfair hearing at an unfair tribunal before judges with actual bias against, and an actual interest in the outcome of, drivers' ticket disputes.

## **RELIEF SOUGHT**

85.    This Complaint alleges claims under 42 U.S.C. § 1983 for violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution and the New York State Constitution, which prohibits identical conduct, N.Y. Const, Article I, §§ 6 and 7(a), for injuries and damages caused by the Defendants in their official capacities as employees, agents, and/or servants of NYC.

---

[30] Dec. 4, 2019 N.Y. State Comptroller Thomas P. DiNapoli's Audit Report 2017-N-8 at 9-10, addressing "Selected Aspects of Parking Violations Operations to Collect Fines and Fees" by DOF, https://www.osc.state.ny.us/state-agencies/audits/2019/12/04/selected-aspects-parking-violations-operations-collect-fines-and-fees.
[31] Ex. 8, Fox 5 NY, *NYC Ticket Judges*, Jul. 22, 2010.
[32] Melissa Sanchez, *How Chicago Ticket Debt Sends Black Motorists Into Bankruptcy*, ProPublica, Feb. 27, 2018, https://features.propublica.org/driven-into-debt/chicago-ticket-debt-bankruptcy/; *see* U.S. Commission on Civil Rights, *Targeted Fines and Fees Against Low-Income Communities of Color: Civil Rights and Constitutional Implications,* Sept. 2017; James DeHaven, *Las Vegas' Low-Income Areas Hit Harder by Parking Tickets, Analysis Shows*, L.V. REV.-J., Jan. 17, 2015, https://www.reviewjournal.com/local/local-lasvegas/las-vegas-low-income-areas-hit-harder-by-parking-tickets-analysis-shows/.

86.    This Complaint also seeks declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure implementing that Act.

87.    Plaintiffs and members of the class Plaintiffs seek to represent further seek rescission of all fines illegally collected from them by Defendants and an order enjoining imposition of fines in excess of the amount authorized by statute,[33] dismissing unpaid illegal duplicative tickets in collections, and enjoining the issuance of additional duplicative tickets in violation of federal, state, and local law.

## CLASS ACTION ALLEGATIONS

88.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> **All vehicle owners/operators and other persons and entities who, from December 4, 2012 to present, received more than one NYC notice of parking violation on the same day, for the same vehicle, for the same Violation Code, and in the same location, except for "status" Violation Codes 70-76, for which the same location requirement does not apply.[34]**

(the "Class").

---

[33] 19 RCNY § 39-05 "Amount of Fines" contains a specific schedule of fines for specific types of parking violations, and states "Except as otherwise provided for the specific violations within the Restricted Area, the following schedule of fines shall apply to violations listed below," and no part of § 39-05 allows Defendants to arbitrarily exceed the fine amounts authorized by stacking duplicative tickets to double, triple, or otherwise multiply the authorized fine limit by any number.

[34] Status Violation Codes 70-76 are issued and adjudicated as parking tickets, but correspond to location agnostic violations for standing or parking of a vehicle with improper or missing registration and inspection stickers, covered Vehicle Identification Numbers, and improperly displayed license plates.  Excluded from the Class definition are NYC Notice of Parking Violations or other summonses issued for Violation Codes 1-3, 5, 7-9, 12, 29, 33, 36, 54, and 87, which correspond generally to violations issued for unauthorized passenger pickup or discharge, engine idling, "Blocking the Box," off-street parking in zones reserved for people with disabilities, misuse, alteration, or fraudulent use of parking and intercity bus permits, and camera violations for running red lights, speeding in school zones, and failure to make a right turn from a bus lane.

89.     This Class is so numerous that joinder of all members is impracticable.  Although the precise size of the Class (and any separate classes or sub-classes that may be appropriate under Rule 23(c)(5)) is presently unknown to Plaintiffs, this information is easily obtainable from Defendants' records.  It is estimated that the Class consists of at least tens of thousands of owners and operators of vehicles that have been ticketed in NYC.

90.     There are questions of law or fact common to the Class, which predominate over any questions affecting only individual Class members.   Among the principal common and predominating questions of law or fact in this case are the following:

     a.  whether NYC, through DOF, NYPD, related departments, bureaus, and agencies, and/or the individual defendants, authorized, implemented, followed and/or permitted policies, practices, and procedures which resulted in the issuance and enforcement of improper duplicative parking tickets;

     b.  whether NYPD and other agencies authorized to issue NYC parking tickets violated NYC's own parking laws and regulations by systematically issuing and/or enforcing duplicative parking tickets;

     c.  whether Defendants deprived Class members of their Constitutional rights through the imposition of fines and/or penalties for duplicative parking tickets; and

     d.  what and when NYC officials knew about duplicative ticketing policies and practices.

91.     Whether Defendants violated Section 1983 and other laws can easily be determined from Defendants' automated systems and electronic records, programmed to store and retrieve the types of data and information referenced herein.

92.     Plaintiffs' claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.  Moreover, there are no defenses available to Defendants that are unique to Plaintiffs.

93.     Plaintiffs will fairly and adequately protect the interests of the Class and are committed to vigorously pursuing this litigation.  Further, Plaintiffs have retained counsel experienced in handling large complex actions involving thousands of parties, substantial sums of money, and complicated legal, factual, and electronic discovery issues.  Neither Plaintiffs nor their counsel have any interests which are antagonistic to or conflict with those of the Class or which might cause them to not vigorously pursue this action.

94.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for the parties opposing any Class, as well as a risk of adjudication with respect to individual members, which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impede or impair their ability to protect their interests.

95.     A class action is a superior method for the fair and efficient adjudication of this controversy.  The interests of Class members in individually controlling the prosecution of separate claims against Defendants may be small given the amount of the actual damages at issue for each Class member and the burdens on their time and resources, but which in the aggregate are estimated to involve tens of millions of dollars.  Management of the action as a class action is likely to present significantly fewer difficulties than those presented by the assertion of tens of

thousands of individual claims. The identities of Class members can easily be obtained from Defendants' computerized and electronic records.

## COUNT 1

### *42 U.S.C. § 1983 — Violations of United States Constitution*

96.    Plaintiffs repeat and re-allege each and every allegation set forth above as though fully set forth in complete detail below.

97.    Defendants are persons within the meaning of 42 U.S.C. § 1983.

98.    Defendants, acting under color of state law, subjected Plaintiffs and other Class members to the foregoing acts and omissions without due process of law and in violation of 42 U.S.C. § 1983, thereby depriving Plaintiffs and the Class of their rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, including without limitation, deprivation of the following Constitutional rights:

a) freedom from unreasonable seizures and unlawful taking of property; and

b) freedom from deprivation of property without due process of law.

99.    Plaintiffs and other Class members have a property interest in the monies that Defendants have and/or are attempting to unlawfully appropriate from them as purported fines under the illegal ticketing scheme described herein.

100.    As a direct and proximate result of Defendants' deprivation of their federal Constitutional rights, Plaintiffs and the Class have suffered damages in the manner and amounts set forth above.

## COUNT 2

### *N.Y. Const., Article I, §§ 6 and 7 — Violations of New York State Constitution*

101.    Plaintiffs repeat and re-allege each and every allegation set forth above as though fully set forth in complete detail below.

102.    Defendants, acting under color of state law, subjected Plaintiffs and other Class members to the foregoing acts and omissions without due process of law and in violation of the New York State Constitution, thereby depriving Plaintiffs and the Class of their rights secured by Article I, Sections 6 and 7 of the New York State Constitution, including without limitation, deprivation of the Constitutional rights of:

> a) freedom from unreasonable seizures and unlawful taking of property; and

> b) freedom from deprivation of property without due process of law.

103.    Plaintiffs and other Class members have a property interest in the monies which were unlawfully appropriated from them as purported fines under the illegal ticketing scheme described above.

104.    As a direct and proximate result of Defendants' deprivation of their state Constitutional rights, Plaintiffs and the Class have suffered damages in the manner and amounts set forth above.

## COUNT 3

### *28 U.S.C. §§ 2201 and 2202 — Declaratory Judgment*

105.    Plaintiffs repeat and re-allege each and every allegation set forth above as though fully set forth in complete detail below.

106.    Plaintiffs seek declaratory relief and judgment as matters alleged herein are subject to disposition as a matter of law pursuant to 28 U.S.C. §§ 2201 and 2202.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all matters so triable.

WHEREFORE, Plaintiffs demand judgment against Defendants on the claims alleged herein as well as the following additional and further relief:

a.  an Order certifying this case as a class action;

b.  compensatory damages to Plaintiffs and the Class for their injuries suffered by reason of Defendants' unlawful conduct alleged herein;

c.  an Order enjoining Defendants' unlawful conduct alleged herein and requiring Defendants' to utilize electronic ticketing devices that automatically prevent duplicative ticketing;

d.  a declaration that Defendants' conduct violated Plaintiffs' and the Class' federal and state Constitutional and civil rights;

e.  attorneys' fees under 42 U.S.C. ss 1988(b) and other provisions of law;

f.  the costs and expenses of this action; and

g.  such other and further relief as the Court deems just, proper, and appropriate.

Dated: New York, New York
           December 4, 2020

BY: _____/S/_____
LOWER LAW, PLLC
ROBERT B. LOWER
535 Fifth Avenue, 4th Floor
New York, New York 10017
Tel. (646) 398-1018
rlower@lowerlaw.com

BY: _____/S/_____
GERAGOS & GERAGOS, PC
TINA GLANDIAN
DANIEL LUST
MARK GERAGOS
BEN MEISELAS
256 Fifth Avenue
New York, New York 10001
Tel. (213) 625-3900
tina@geragos.com
lust@geragos.com
mark@geragos.com
meiselas@geragos.com

*Attorneys for Plaintiffs and the Putative Class*