UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                                    :
JAIME TORRES and RAKESH KALRA, *individually and* :
*on behalf of all others*,                                          :
                                                                    :
                                        Plaintiffs,                 :        20 Civ. 10210 (JPC)
                                                                    :
                -v-                                                 :        OPINION AND
                                                                    :        ORDER
                                                                    :
CITY OF NEW YORK, *acting through the New York City* :
*Police Department and New York City Department* :
*of Finance*, *et al.*,                                             :
                                                                    :
                                        Defendants.                 :
                                                                    :
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        Suppose one day, you park on the street in a zone where parking is not allowed.  When you

return to your car hours later, you find not one, but two, parking tickets under your windshield

wiper.  A bad day, to be sure.  But did your receipt of two parking tickets, for an illegally parked

car that you failed to move over an extended period, violate your constitutional rights?  That, in

essence, is what Plaintiffs Jaime Torres and Rakesh Kalra claim in this putative class action

challenging New York City's parking ticket regime.  They allege that, by issuing multiple tickets

at different times the same day, the City of New York and its personnel violated their procedural

due process rights under the Fourteenth Amendment, as well as their rights under the Fourth and

Eighth Amendments.  The Court cannot agree.  While receiving multiple parking tickets over a

relatively brief period of time is no doubt frustrating, the City's enforcement of its parking laws as

to Plaintiffs satisfied procedural due process, did not constitute a seizure under the Fourth

Amendment, and was not an unconstitutional excessive fine under the Eighth Amendment.

# I. Background[1]

## A. Facts

On November 8, 2019, Jaime Torres parked at a Department of Education parking zone in New York City.  Am. Complaint ¶ 13.  As a school teacher, Torres had a parking permit that allowed him to park there.  *Id.* ¶ 12.  On that day, however, he forgot to display it.  *Id.* ¶ 13.  So with no permit displayed, New York City parking enforcement officials gave Torres two parking tickets within twelve minutes of each other.  *Id.* ¶ 11.

After receiving the tickets, Torres administratively challenged the second parking ticket, but not the first, by entering a "not guilty" plea with New York City's Department of Finance.  *Id.* ¶ 14; Dkt. 38 ("Complaint Supp."), Exh. 3 at 1.[2]  In presenting that challenge, Torres explained that his parking permit allowed him to park at the Department of Education parking zone and that he simply forgot to display it on November 8, 2019.  Am. Complaint ¶ 14.  He did not, however, note that he received two tickets within twelve minutes of each other.  A Department of Finance administrative law judge ("ALJ") rejected Torres's argument and adjudicated him guilty.  *Id.* ¶¶ 15-16, Exh. 3 at 1.

---

[1] The Court takes these allegations from Plaintiffs' Amended Complaint.  *See* Dkt. 35 ("Am. Complaint").  In the present posture, the Court accepts the Amended Complaint's factual allegations as true and draws all reasonable inferences in Plaintiffs' favor.  *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  The Court at this stage may also consider statements or documents incorporated into the Amended Complaint by reference.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 502 (S.D.N.Y. 2018), *aff'd,* 772 F. App'x 4 (2d Cir. 2019).

[2] The exhibits at Docket Number 38 were attached to the original complaint, but "were inadvertently omitted" when Plaintiffs filed their Amended Complaint on July 26, 2021 and later were filed by Plaintiffs on August 10, 2021.  Complaint Supp. at 1.  For convenience, the Court will cite these exhibits separately, while treating them as though they were attached to the Amended Complaint.

After the ALJ issued that order, Torres tried to enter a "Not Guilty" plea on the first ticket he received on November 8, 2019.  Am. Complaint ¶ 17.[3]  But the Department of Finance website did not allow him to do so.  *Id.* ¶ 18.  To avoid paying "additional fines and penalties or having his car impounded," Torres paid the $95 fine for each ticket and another $10 penalty for the second ticket, $200 in total.  *Id.* ¶ 19.

The Department of Finance allows an appeal of an ALJ's decision provided it is filed within thirty days.  *See* Appeal a Hearing Decision, NYC Department of Finance, https://www1.nyc.gov/site/finance/vehicles/dispute-appeal-hearing.page (last visited Mar. 11, 2022).  But Torres waited eight months to appeal the ALJ's decision as to the second ticket to the Appeals Board.  *See* Am. Complaint ¶ 20.  He argued in his appeal that the second ticket "was duplicative of another ticket issued for the same violation on the same day."  *Id.* (quotations omitted).  The Appeals Board denied Torres's appeal by explaining that Torres failed to submit it "within 30 days of the guilty decision."  *Id.* ¶ 21 (capitalization changed).  After the Appeals Board's decision, Torres did not pursue what is known as an Article 78 proceeding, which entails judicial review by the New York Supreme Court of a final agency determination.  *See* N.Y. C.P.L.R. § 7801.

In April 2021, a year-and-a-half after receiving the first two parking tickets, Torres received another parking ticket after once again forgetting to display a parking permit when parked in a restricted zone.  Am. Complaint ¶ 83, Exhs. 1, 3.  Torres pleaded not guilty and argued to the

---

[3] Plaintiffs in their Amended Complaint flip the order of the two tickets when discussing which ticket Torres was able to challenge with the Department of Finance, but this does not affect the analysis in this Opinion and Order.  *Compare, e.g.*, Am. Complaint ¶ 17 (claiming Torres tried to "enter a Not Guilty plea on his *duplicative second ticket*" after the ALJ rejected his "not guilty" plea on the other ticket (emphasis added)), *with* Complaint Supp., Exhs. 2, 3 (showing that Torres challenged, and the ALJ rejected the challenge, to the ticket issued at 10:41 a.m.—issued twelve minutes after the 10:29 a.m. ticket).

Department of Finance that it should dismiss his ticket because he had simply forgotten to display his parking permit.  *Id.* ¶ 83.  The ALJ rejected Torres's defense because "no permit was displayed and the photo [that Torres] submitted [of his permit] is illegible."  *Id.*, Exh. 3 at 1-2.  The Amended Complaint does not say whether Torres appealed that decision or sought an Article 78 proceeding.

The other named Plaintiff, Rakesh Kalra, received two parking tickets five hours apart for illegally parking at a bus stop.  *Id.* ¶ 24.  Kalra challenged the tickets by submitting a request for a hearing to the Department of Finance.  *Id.* ¶ 25.  He argued that he believed "parking was permitted on Sundays at the spot" and that he "received 2 tickets for the same offen[s]e."  *Id.* ¶ 26 (quotations omitted).  An ALJ rejected Kalra's defense.  *Id.* ¶¶ 27-28.  The ALJ reasoned that parking was not permitted at the bus stop on Sundays and that the summonses were not "repeat summonses" because they "were not issued within three hours of each other."  Complaint Supp., Exh. 5 at 2.

Kalra then paid the $230 in total fines for the two tickets and timely appealed the ALJ's decision to the Appeals Board.  Am. Complaint ¶¶ 29-30.  On appeal, Kalra again contended that he "[r]eceived 2 [tickets] for the same offense at the same location."  *Id.* ¶ 30.  The Appeals Board affirmed, finding "no error of fact or law" in the ALJ's decision.  *Id.* ¶ 32 (quotations omitted).  The Amended Complaint does not allege whether Kalra sought Article 78 judicial review of the Appeals Board's decision.

**B.  Procedural History**

In December 2020, Plaintiffs filed this action under 42 U.S.C. § 1983, seeking damages and a declaration that Defendants violated their constitutional rights.  *See* Dkt. 1.  Two months later, Defendants moved to dismiss the original complaint.  *See* Dkt. 26.  In July 2021, the Court denied the motion as moot when it granted Plaintiffs' application to file an amended complaint. *See* Dkt. 32.

4

Plaintiffs did so on July 26, 2021.   In the Amended Complaint, Plaintiffs name as Defendants the City of New York, laying out the various agencies responsible for parking enforcement, Am. Complaint ¶¶ 35-45, as well as in their official capacities Jeffrey Shear, the Deputy Commissioner of the New York City Department of Finance's Treasury and Payment Services; Mary Gotsopoulis, the Department of Finance's Chief Administrative Law Judge; and ten Jane and John Does, *id.* ¶¶ 46-51.  In the Amended Complaint, Plaintiffs allege that Defendants violated their (1) Fourteenth Amendment procedural due process rights, (2) Eighth Amendment (incorporated through the Fourteenth Amendment) right to be free from excessive fines, and (3) Fourth Amendment (incorporated through the Fourteenth Amendment) right against unreasonable seizures.  *Id.* ¶¶ 107-111.  Plaintiffs also allege that Defendants violated the New York State Constitution's protections against excessive fines, unreasonable seizures, and unlawful taking of property, as well as guarantees of due process of law.  *Id.* ¶¶ 112-115.  As relief, Plaintiffs seek damages, declaratory relief, and injunctive relief.  *Id.* ¶¶ 96-98.

Defendants have moved to dismiss the Amended Complaint.  *See* Dkts. 36, 37 ("Motion to Dismiss").  After the parties completed briefing the motion, the Court ordered the parties to file letters addressing whether Plaintiffs had standing to bring their unreasonable seizures claims as Plaintiffs framed those claims in their Opposition Brief.  Dkt. 43; *see* Dkt. 28 ("Opposition") at 39 ("Plaintiffs have described a putative class comprising individuals who are slated to have property seized by Defendants and/or have already been deprived of property to satisfy illegal duplicative parking tickets.").  The Court held oral argument on Defendants' motion to dismiss on March 7, 2022.

## II.  Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.  Discussion

### A.  Federal Claims

Section 1983 creates a federal right of action against any person who, acting under color of state law, deprives someone of a right created by the Constitution or federal law.  42 U.S.C. § 1983.  Because each Defendant qualifies as a "person" under section 1983,[4] the only question is whether Defendants violated Plaintiffs' rights.  Plaintiffs contend that Defendants did so in three ways.  They claim that the City's parking ticket system violated their (1) procedural due process rights, (2) right to be free from unreasonable seizures, and (3) right to be free from excessive fines. The Court will take each argument in turn.

---

[4] New York City, as a municipality, counts as a "person" under section 1983.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  To hold a municipality liable for its employees' unconstitutional actions, a plaintiff must show a municipal policy or custom that directly caused the plaintiff to experience a constitutional violation.  *See id.* at 691; *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  Because the Court finds no constitutional violation, the Court need not address whether Plaintiffs adequately pleaded municipality liability under *Monell*.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

### 1.  Procedural Due Process

No State may "deprive any person of life, liberty, or property" without "due process of law."  U.S. Const. amend. XIV.  To prevail on a procedural due process claim, Plaintiffs must do two things.  First, they must show that Defendants deprived them of a "liberty or property interest."  *See Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011).  And second, Plaintiffs must show that Defendants did so without "process" in the form of constitutionally required procedural protections.  *Id.*  Defendants do not contest that they deprived Plaintiffs of property by requiring the payment of fines for their parking violations.  *See* Motion to Dismiss at 6.  The only question is thus whether the City's parking ticket system afforded Plaintiffs the proper procedural protections.

Those procedural protections include the right to notice, an opportunity to be heard, and an impartial adjudicator.  *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883 (2009); *In re Murchison*, 349 U.S. 133, 136 (1955); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950).  To determine the procedural protections owed, courts must balance: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation . . . through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  "*Mathews* is the test for both when a hearing is required (i.e., pre- or post-deprivation) and what kind of procedure is due a person deprived of liberty or property."  *Brody v. Vill. of Port Chester*, 434 F.3d 121, 135 (2d Cir. 2005).  "[P]rocedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to [the deprivation of the protected interest], so long as a full adversarial hearing is provided afterward[]."  *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001) (citations omitted).

In applying these principles, courts have repeatedly affirmed that the City's parking ticket system, combined with New York's Article 78 procedures, "provide[s] parking violators . . . with more than sufficient process to satisfy the Constitution." *Rackley v. City of New York*, 186 F. Supp. 2d 466, 480 (S.D.N.Y. 2002); *see also, e.g.*, *Tsinberg v. City of New York*, No. 20 Civ. 749 (PAE), 2021 WL 1146942, at *5 (S.D.N.Y. Mar. 25, 2021); *Nestle Waters N. Am., Inc. v. City of New York*, No. 15 Civ. 5189 (ALC), 2016 WL 3080722, at *8 (S.D.N.Y. May 25, 2016), *aff'd*, 689 F. App'x 87 (2d Cir. 2017); *Shibeshi v. City of New York*, No. 11 Civ. 4449 (LAP), 2011 WL 13176091, at *2 (S.D.N.Y. Sept. 21, 2011), *aff'd*, 475 F. App'x 807 (2d Cir. 2012); *Schaer v. City of New York*, No. 09 Civ. 7441 (CM) (MHD), 2011 WL 1239836, at *7 (S.D.N.Y. Mar. 25, 2011); *Yu Juan Sheng v. City of New York*, No. 05 Civ. 1118 (RRM) (VVP), 2009 WL 6871132, at *9 (E.D.N.Y. June 26, 2009); *Iwachiw v. New York State Dep't of Motor Vehicles*, 299 F. Supp. 2d 117, 122 (E.D.N.Y. 2004), *aff'd*, 396 F.3d 525 (2d Cir. 2005).

The breadth of caselaw affirming the City's parking ticket system is unsurprising: New York City provides extensive pre- and post-deprivation procedures to challenge parking tickets, which exceed the Fourteenth Amendment's requirements. After receiving a parking ticket, a person has thirty days to enter a plea. *See* The Official Compilation of the Rules of the City of New York, Title 19, § 39-04. If a ticket recipient pleads not guilty, an ALJ holds a hearing in which the recipient may dispute the parking violation. *See id.* § 39-10. The recipient may then appeal an adverse decision from the ALJ within thirty days "by submitting a written notice of appeal to the [New York City Parking Violations] Bureau that sets forth the reason why the original decision should be reversed or modified." *Schaer*, 2011 WL 1239836, at *8; *see also* The Official Compilation of the Rules of the City of New York, Title 19, § 39-12. And if unsatisfied with the

administrative result, the ticket recipient "can pursue an Article 78 proceeding in an appropriate New York State court." *Schaer*, 2011 WL 1239836, at *8.

Because these extensive procedural protections exceed the constitutional requirement, Plaintiffs "must allege some departure from th[is] constitutionally more than sufficient process." *Tsinberg*, 2021 WL 1146942, at *5 (quotations omitted).  Plaintiffs try to clear this hurdle through five arguments, none of which are persuasive.

*First*, Plaintiffs accuse Defendants of violating New York City law by giving them multiple tickets for parking in the same location on the same day.  *See* Am. Complaint ¶¶ 60-63; Opposition at 26-27.  They contend that continually parking in the same spot throughout the day only counts as a single parking violation.  And in their view, in those circumstances, New York City's law permits issuing only a single ticket for a single infraction.

But to begin with, Plaintiffs' argument misapprehends procedural due process.  The Supreme Court has "long recognized that a mere error of state law is not a denial of due process." *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) (quotations omitted).  If the rule were otherwise, "every erroneous decision by a state court on state law would come to [federal courts] as a federal constitutional question." *Id.* (quotations and alterations omitted).  So for a procedural due process claim, "the relevant inquiry is what process [the plaintiff] received, not whether the state court decided the case correctly." *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (per curiam).  It therefore does not matter for procedural due process purposes whether Defendants improperly interpreted New York City's law in giving Plaintiffs two parking tickets on the same day.

Yet even if Plaintiffs could shoehorn their claim into the procedural due process doctrine, Plaintiffs would have still failed to plausibly state a claim that the issuance of multiple tickets for a car that remained illegally parked violated New York law.  A plain reading of New York City's

laws and regulations reveals that they do not prohibit issuing multiple tickets on the same day when a car remains illegally parked.  New York City Administrative Code section 19-203 says "that monetary penalties shall not exceed fifty dollars for *each parking violation*, provided that monetary penalties shall not exceed one hundred dollars for *each parking violation* committed in a space where stopping or standing is prohibited . . . ."  N.Y.C. Admin. Code § 19-203(b) (emphasis added).  While this provision lays out the maximum penalty for an individual violation, it does not say what qualifies as a "parking violation."  Nor do New York City's Rules define the phrase "parking violation."  A New York City Rule does, however, define "parking" as "the standing of a vehicle, whether occupied or not, otherwise [sic] than temporarily for the purpose of and while actually engaged in loading or unloading property or passengers."  34 R.C.N.Y. § 4-01.

But no Rule defines "violation."  The Court thus looks to dictionaries to determine the word's "plain and ordinary meaning."  *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 567 (2d Cir. 2011).  *Black's Law Dictionary* provides two definitions helpful to understanding what "violation" means in this context.  It defines a violation as "[a]n infraction or breach of the law; a transgression."  *Violation*, Black's Law Dictionary (11th ed. 2019).  It then defines a "continuing violation" as "[a]n unlawful act that occurs as part a series of related or recurring unlawful acts over a period of time.  Each act is treated as a separate violation."  *Id.*

Putting these definitions together crystalizes what "parking violation" means.  Because New York City's Rules say that parking requires remaining stopped for more than a temporary period, a parking violation has a time element to it.  The car must remain stopped for a period of time for the violation to occur.  That time element also means that illegal parking creates continuing harm; a car continues to occupy a spot that it has no right to be in.  Taking the facts here, that harm would include impeding the ability of busses to pull into designated bus stop zones,

10

thereby causing safety and traffic congestion concerns.  That continuing harm thus means that remaining stopped could count as successive violations involving multiple unlawful acts.  It therefore follows that parking enforcement officials treat remaining illegally parked in the same spot as multiple violations.

Plaintiffs implicitly acknowledge as much by contending that the alleged harm is for receiving "more than one NYC notice of parking violation on the *same day*, for the same vehicle, for the same Violation Code, and in the same location."  Am. Complaint ¶ 99 (emphasis added) (quotations omitted); *see also id.* ¶¶ 2, 7, 11, 20, 94.  Plaintiffs, in other words, acknowledge that remaining parked in the same spot could count as multiple violations once the car stays parked in that spot overnight.  Plaintiffs therefore only quibble with the necessary time for a single violation to trigger a second violation.  Yet Plaintiffs point to no law or regulation that requires reading a "day" requirement into New York City Administrative Code section 19-203(b).

Nor do the above definitions suggest reading in such a limitation requiring overnight parking for issuance of a second ticket.  Again, the only time limit that the New York City law mentions is that a car must remain stopped more than temporarily.  The Court need not determine what minimum interval is needed to count as a second violation to find that the City could reasonably interpret that interval as less than twenty-four hours.[5]  Defendants thus did not violate

---

[5] Assuming as true, as the Court must at this motion to dismiss stage, that Torres received two tickets within twelve minutes for remaining parked in the same location, that interval might arguably fall below the minimal interval for issuing two tickets under New York City law.  But Torres never challenged either ticket on that basis before the ALJ, and he failed to timely appeal the ALJ's adjudication of the second ticket to the Appeals Board.  And more importantly, as discussed above, there are sufficient procedural safeguards in New York City's parking enforcement regime to satisfy procedural due process.  *See Engle*, 456 U.S. at 121 n.21; *Swarthout*, 562 U.S. at 222 ("Because the only federal right at issue is procedural, the relevant inquiry is what process [the plaintiff] received, not whether the state court decided the case correctly.").

the law by giving Plaintiffs two tickets for remaining illegally parked in the same spot on the same day.

To interpret the provisions otherwise would lead to patently illogical results. For instance, taking Plaintiffs' position to the logical extreme, a person who illegally parks his or her car for twenty-three hours, but during the same day from 12:30 a.m. until 11:30 p.m., could not receive a second ticket, yet someone who illegally parks his or her car for the half-hour interval from 11:45 p.m. to 12:15 a.m. could receive two tickets. And under Plaintiffs' interpretation, the City could only give a $50 parking ticket a day for a typical illegally parked car. *See* N.Y.C. Admin. Code § 19.203(b). Yet daily rates at parking garages in New York City regularly exceed that fine amount. *See, e.g.*, https://en.parkopedia.com/parking/locations/39_exchange_pl_(45_wall_st)_f5 7fdr5ref73bxs0hf/?country=us&arriving=202203110000&leaving=202203112330 (last visited Mar. 10, 2022) (Financial District parking that exceeds $50 per day). It would thus make economic sense in those parts of the City to park illegally because paying a ticket would be cheaper than paying to access a parking garage. And once someone saw that he or she received a ticket, it would make sense to not move that illegally parked car at any point that day.

Plaintiffs' reading thus would encourage illegal parking, the exact opposite intention of the parking code. Their reading therefore flouts the absurdity canon: "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). Here, not only does a plain reading of the relevant New York City law not support Plaintiffs' desired construction, but Plaintiffs' interpretation would trigger absurd and illogical results. The Court rejects that perverse interpretation.

*Second*, Plaintiffs allege that the ALJs who preside over the parking ticket hearings are unconstitutionally biased.  *See* Opposition at 13-15.  In their view, the bias of ALJs is established by a media report of interviews of unidentified ALJs who stated that they work for an "agency that is charged with making money" where "fairness is not at a high level of priority," they "don't have time to dig into cases and check the law," and they "often can't be fair to motorists."  *Id.* at 14; *see* Am. Complaint, Exh. 8.  These statements, according to Plaintiffs, track how ALJs have handled their actual cases because "two rounds of review by [ALJs]" failed to "detect patently illegal duplicative parking tickets."  Opposition at 13.  In other words, ALJs have proven their bias by affirming supposedly improperly issued tickets during Plaintiffs' administrative proceedings.

This argument suffers from two flaws.  One, Plaintiffs have not plausibly alleged that the unidentified ALJs' statements show bias.  Two, even if Plaintiffs had pleaded sufficient facts to show ALJ bias, the Article 78 proceedings can cure it.

To plausibly allege that an ALJ has "an unconstitutional risk of bias," a plaintiff "must overcome a presumption of honesty and integrity in those serving as adjudicators."  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  "[T]his presumption can only be rebutted if the party asserting bias makes a showing of a disqualifying interest, either pecuniary or institutional."  *Koam Produce, Inc. v. United States*, 269 F. App'x 35, 37 (2d Cir. 2008) (citing *Wolkenstein v. Reville*, 694 F.2d 35, 41-42 (2d Cir. 1982)); *see also Schweiker v. McClure*, 456 U.S. 188, 195 (1982) (recognizing that "[t]his presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification").  In other administrative adjudication contexts, courts have explained that "to show that an ALJ's bias resulted in the denial of a fair hearing, the claimant must show that the ALJ exhibited a 'deep-seated favoritism or antagonism that would make fair judgment

impossible.'" *Servillo v. Berryhill*, No. 18 Civ. 7118 (HBP), 2019 WL 4594225, at *21 (S.D.N.Y. Sept. 23, 2019) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

Here, Plaintiffs have not overcome the presumption. To begin with, Plaintiffs' bias claim depends in large part on the premise that it is unlawful for parking enforcement officials to issue multiple parking tickets for the same illegally parked car on the same day. But as discussed, the City's current ticket practice does not violate the law. And for Torres, the ALJ did not even know that Torres received multiple tickets: Torres only challenged before the ALJ one of his parking tickets and he failed to note that received another ticket on that same day. *See* Am. Complaint ¶¶ 15-16, Exh. 3 at 1. Thus, the ALJs did not show bias in affirming Plaintiffs' receipt of multiple tickets on the same day.

Nor do Plaintiffs plausibly allege bias by making broad allegations that the ALJs made biased decisions based on the Department of Finance's financial incentives to affirm parking tickets. The fact that the Department of Finance is "in charge of the collection of City revenue . . . is insufficient . . . to base a procedural due process claim." *Jaouad v. City of New York*, 39 F. Supp. 2d 383, 388 (S.D.N.Y. 1999). To assume otherwise would "undermin[e] the impartiality of the ALJs as a whole, based on nothing more than a general assumption" that collecting ticket revenue for the City encourages ALJs to affirm tickets. *Muladzhanov v. City of New York*, No. 18 Civ. 930 (RRM) (ST), 2020 WL 1244656, at *6 (E.D.N.Y. Mar. 16, 2020). Courts have rejected nearly identical allegations of ALJ bias. *See id.*; *Jaouad*, 39 F. Supp. 2d at 384-85.

Plaintiffs' other allegation that ALJs are "less willing to stick their neck out [to find a motorist not guilty] due to guilty quotas" comes closer to plausibly alleging bias, but falls short upon closer scrutiny. Opposition at 14 n.26 (quotations and alteration omitted); *see* Am. Complaint ¶ 79 ("[M]ultiple [Department of Finance] Judges have complained they are pressured

to find drivers guilty and subjected to retaliation when they fail to meet guilty quotas.").  The basis for this allegation is the above media report of interviews of unnamed ALJs.  *See* Complaint Supp., Exh. 8.  But while both the Amended Complaint and Plaintiffs' Opposition liberally use the term "guilty *quotas*," the cited media article actually reports that an unnamed ALJ "claims that [ALJs] are required to report how many tickets they decide are not guilty."  *Id.*  That unnamed ALJ did not say there were guilty quotas.  The article does cite ALJs saying that they must attain a "ticket quota," but that means that they must handle a certain number of cases each hour or risk receiving a reduced workload.  *Id.*

As alleged, these allegations fail to raise a reasonable inference that the ALJs acted with bias against Plaintiffs.  The Department of Finance's efforts to "increase the production levels of ALJs" by setting ticket quotas is "not an infringement of decisional independence."  *Nash v. Bowen*, 869 F.2d 675, 680 (2d Cir. 1989).  Given the many tickets are issued by New York City parking enforcement officials, "simple fairness" to ticket recipients requires ALJs to efficiently process tickets to ensure that all such individuals may exercise their rights to challenge a ticket.  *Id.* at 681.  And having ALJs report the number of tickets that they resolve as not guilty dispositions does not lead to a reasonable inference of bias because Plaintiffs fail to allege how the Department of Finance uses those statistics.  *See id.*  Plaintiffs have not, for instance, alleged that the Department of Finance uses the statistics "[t]o coerce ALJs into lowering reversal rates."  *Id.*  And Plaintiffs' argument that ALJs "receive less work when they miss their guilty quotas," Opposition at 14 (quotations omitted), is not supported by the allegations in the Amended Complaint or the media reporting on which Plaintiffs rely.  Rather than allowing an inference that the Department of Finance is trying to coerce or punish ALJs for finding individuals not guilty of parking offenses, a more reasonable inference is that accumulating data on not guilty dispositions reflects a desire

to ensure that tickets are being properly issued in the first instance. *See Nash*, 869 F.2d at 681 (agency used reversal rates not "to influence ALJs into deciding more cases in favor of the agency" but "as a benchmark in deciding whether there *might* be problems in the adjudicatory methods of particularly high (or low) reversal rate ALJs").

But even if Plaintiffs had pleaded sufficient facts to show that the ALJs acted with bias as to Plaintiffs, their claims would still fail because the availability of Article 78 proceedings adequately serves as a mechanism to cure any bias. "While the existence of a post-deprivation review does not *ipso facto* satisfy the due process guarantee, [courts have] recognized that Article 78 proceedings adequately serve as a backstop against the kinds of erroneous determinations alleged by plaintiff and allow for unfettered review of alleged errors in statutory interpretation." *Muladzhanov*, 2020 WL 1244656, at *6 (alterations, citations, and quotations omitted) (collecting cases); *see also Leary v. Civil Serv. Emps. Ass'n Region 3*, 516 F. App'x 42, 43 (2d Cir. 2013) ("The entire basis of this appeal [including a biased tribunal claim] is foreclosed by precedents of this Circuit and of the Supreme Court" because "[e]mployees who wish to challenge the basis for their termination before a neutral adjudicator may do so in a post-termination proceeding under Article 78 of New York's Civil Practice Law and Rules."); *Quire v. City of New York*, No. 19 Civ. 10504 (RA), 2021 WL 293819, at *6 (S.D.N.Y. Jan. 28, 2021) ("[T]he fact that the [administrative] proceeding was conducted before an allegedly biased administrative law judge . . . does not mean that [the plaintiff]'s pretermination hearing was constitutionally insufficient" because "an Article 78 proceeding in state court constitutes such a wholly adequate post-deprivation hearing." (quotations omitted)); *Sindone v. Kelly*, 439 F. Supp. 2d 268, 277-78 (S.D.N.Y. 2006) (concluding that the plaintiff police officer could not "sustain a due process claim on the ground that he was denied a right to a neutral arbitrator" before his termination because of

"the long recognized classification of Article 78 special proceedings as adequate adversarial hearings for federal due process purposes"), *aff'd*, 254 F. App'x 58 (2d Cir. 2007).  In other words, "[a]n Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process purposes" including for bias claims because a person "may raise claims [in that hearing] that the agency adjudicator was biased and prejudged the outcome."  *Locurto*, 264 F.3d at 174-75 (citations omitted).  Its availability here thus cures any alleged bias that the ALJs showed towards Plaintiffs.[6]

_____

[6] In *Locurto*, the Second Circuit held that the impartial Article 78 review satisfied due process no matter if the decision-maker's bias resulted from a random, unauthorized act or an established government procedure.  264 F.3d at 173 ("Because . . . we conclude that due process is satisfied so long as the government provides a neutral adjudicator at the post-termination hearing for a tenured public employee, the question of 'random and unauthorized' conduct becomes moot, and we therefore need not address it.").  Recent Second Circuit decisions have thus held that Article 78 proceedings cure any alleged bias by an administrative tribunal in a pre-deprivation hearing.  *See, e.g.*, *Leary*, 516 F. App'x at 43.  One unpublished Second Circuit decision has, however, noted a potential inconsistency between *Locurto* and previous Supreme Court precedent.  *See Rothenberg v. Daus*, 481 F. App'x 667, 677 (2d Cir. 2012), *as amended* (July 27, 2012) (citing *Ward v. Vill. of Monroeville*, 409 U.S. 57, 61-62 (1972); *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 618 (1993)).  *Rothenberg* noted potential differences in the caselaw between random, unauthorized acts and established government procedures and ordered the district court on remand to consider this potential issue.  *See id.* at 676.

Courts that have followed the *Rothenberg* approach and (seemingly) found an inconsistency have distinguished between random, unauthorized acts by state employees and established state procedures.  Under this approach, for bias stemming from unauthorized acts, "an Article 78 proceeding is sufficient to defeat a due process claim."  *Quire*, 2021 WL 293819, at *4 n.3.  But for established state procedures that create bias, "the availability of postdeprivation procedures will not, ipso facto, satisfy due process."  *Id.* (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)).  In those circumstances, "the availability of post-deprivation procedures is nonetheless a factor to be considered in the analysis of whether the pre-termination procedures were adequate."  *Id.*  In applying this analysis to Article 78 proceedings, courts have found that the Article 78 proceedings cured any bias because those proceedings "allow[] a petitioner 'to raise claims that the agency adjudicator was biased and prejudged the outcome.'"  *Id.* at *6 (quoting *Locurto*, 264 F.3d at 174).  This Court agrees and finds that the availability of Article 78 proceedings provides a mechanism to cure any bias, even if the *Rothenberg* approach were adopted.

*Third*, Plaintiffs argue that Article 78 proceedings are inadequate because the Department of Finance ignores Article 78 precedent from the New York State Supreme Court.  Opposition at 16.  Plaintiffs contend that the Department of Finance's refusal to follow such judicial decisions negates the post-deprivation protections afforded in Article 78 proceedings.  *Id.*  Plaintiffs point to a statement from one of the Defendants saying "that parking ticket decisions from the Supreme Court of the State of New York are not binding precedent for [the Department of Finance] unless and until an Appellate Court rules similarly."  *Id.* (quotations omitted); *see* Complaint Supp., Exh. 12.  Plaintiffs claim that this statement shows that "even if New York's Supreme Court issued an Article 78 decision categorically prohibiting the issuance and enforcement of duplicative tickets, Defendants have and continue to openly admit they would not follow it."  Opposition at 16.  Although unclear, Plaintiffs seem to contend that an ALJ's or the Appeals Board's failure to follow a New York state trial court's opinion in later cases renders Article 78 proceedings meaningless.  This concern, according to Plaintiffs, is compounded because Defendants "prevent appellate courts" from creating "binding precedent" that would prohibit Defendants from issuing and enforcing duplicative tickets.  *Id.*

This argument has several problems.  To start with, Plaintiffs have the backstop of appealing any administrative decision in an Article 78 proceeding.  Moreover, even assuming that Plaintiffs accurately represent Defendants' position on the precedential effect of Article 78 proceedings, Defendants would be correct to take the view that a decision in an individual case of the New York State Supreme Court, as New York's trial court, is not binding on future cases.  *See* N.Y. Stat. Law § 72(b) cmt. (McKinney 2022) ("Court of Appeals are binding upon the Appellate Division; those of the Appellate Division on the Supreme Court; and so on down from the superior to the inferior judicatories.").  Nor have Plaintiffs cited a single New York State Supreme Court

decision holding that issuing multiple parking tickets in the same day violated the law.  Defendants thus did not violate Plaintiffs' procedural due process rights by not following a hypothetical state trial court decision.

But even if a state trial court had found the regime illegal, and even if that decision had some binding effect on ALJs or the Appeals Board, Plaintiffs' argument confuses opinions for judgments.  A court only has the power to bind the parties properly before it.  *See Green v. Santa Fe Indus., Inc.*, 514 N.E.2d 105, 108 (N.Y. 1987) (explaining that a judgment typically only binds "the parties to that action" and "those in privity with them"); *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of a stay) ("Equitable remedies, like remedies in general, are meant to redress the injuries sustained by a particular plaintiff in a particular lawsuit.").  That power means that the court's *judgment*—the court's final decision of the parties' rights and obligations in a case—binds those parties.  But a court's *opinion* lacks the power to tell people what they should do in the future.  *See* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 987 (2018) (explaining that judicial opinions do not amend or strike down a law because courts only have the power to "decline to enforce the [illegal] statute and enjoin the [the government] from enforcing it").

And so, City officials who issue and affirm duplicative tickets would not violate a ticket recipient's procedural due process rights by disregarding or misapplying a hypothetical New York State Supreme Court decision that found the issuance of duplicative parking tickets, in a different case, to be illegal.  While an Article 78 court may ultimately reverse that administrative decision, it does not mean that the administrative decision violated the person's due process rights.  *See Swarthout*, 562 U.S. at 222 ("[T]he relevant inquiry [for a procedural due process claim] is what process [the plaintiff] received, not whether the state court decided the case correctly."); *Rosario*

*v. Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chicago*, No. 10 Civ. 1512 (JJT), 2013 WL 842651, at *6 (N.D. Ill. Mar. 6, 2013) ("The plaintiffs' argument [that the agency must correctly apply caselaw] would convert every 'incorrect' agency decision into a constitutional due process violation . . . ."), *aff'd*, 743 F.3d 531 (7th Cir. 2014); *see also Sylvia Development Corp. v. Calvert Cnty.*, 48 F.3d 810, 829 n.7 (4th Cir. 1995) ("[T]o conclude that every agency decision reversed as 'arbitrary and capricious' under state or federal administrative law rises to the level of a constitutional claim would distort the substantive due process doctrine."). Of course, a court could enjoin Defendants from issuing duplicative parking tickets. That *judgment* would preclude them from issuing those tickets in the future. But Plaintiffs do not claim that any court has issued such an injunction.

*Fourth*, Plaintiffs contend that Article 78 proceedings provide an insufficient procedural backstop because a person must pay $305 in filing fees for the proceedings, which "exceeds the cost of most duplicative tickets." Opposition at 17. Thus, Plaintiffs argue, the "economic futility" of using Article 78 proceedings means that those proceedings do not provide a potential cure for any procedural due process violations before the ALJs. *Id.* at 18.

But again, Plaintiffs did not plausibly allege that the pre-deprivation proceedings provided inadequate due process protections or that Defendants skirted the procedures in those proceedings. The Court therefore "need not decide whether the availability of an Article 78 proceeding, standing alone, would be sufficient to comply with the Due Process Clause where the amount in controversy is low compared with the expense and complexity of such a proceeding." *Bens BBQ, Inc. v. Cnty. of Suffolk*, 858 F. App'x 4, 7 (2d Cir. 2021). The pre-deprivation procedures "in addition to the availability of the Article 78 proceeding reduces the risk of erroneous deprivation such that the *Mathews* test does not require additional procedures." *Id.*

*Fifth*, Plaintiffs argue that Article 78 proceedings are inadequate because Defendants did not explicitly give Plaintiffs written notice that the proceedings were an option for them. Opposition at 19-20.  In Plaintiffs' view, by omitting information about the right to Article 78 review on all Appeals Board decisions, Defendants failed to provide sufficient notice.  That lack of notice is noteworthy, according to Plaintiffs, because the Appeals Board's decisions used to include this information.  *See id.*

But "cases from both the Supreme Court and [the Second Circuit] make clear that the federal procedural due process guarantee does *not* require state officials to inform individuals of all the procedural guarantees they enjoy under state law."  *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) (emphasis in original).  This rule means that due process does not "requir[e] individualized notice of state-law remedies" when those remedies "are established by published, generally available state statutes and case law."  *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999).  That makes sense.  "Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him."  *Id.*

Here, that means that "the Court cannot find that due process required Defendant[s] to inform Plaintiff[s] of [their] right to an Article 78 proceeding."  *Smalls v. New York City Emps.' Ret. Sys.*, No. 18 Civ. 5428 (KPF), 2020 WL 5525746, at *5 (S.D.N.Y. Sept. 15, 2020).  Nor does it matter the City used to inform people about their right to an Article 78 proceeding.  "A constitutional entitlement cannot be created merely because a wholly and expressly discretionary state privilege has been granted generously in the past."  *Allen v. Cuomo*, 100 F.3d 253, 261 (2d Cir. 1996) (quotations and alterations omitted).  Thus, a judge in this District recently rejected this

very argument in affirming that the City does not have to explicitly inform people about their rights to an Article 78 proceeding.  *See Smalls*, 2020 WL 5525746, at *6 n.3.

### 2.  Fourth Amendment Unreasonable Seizures

Besides their procedural due process claims, Plaintiffs contend that Defendants violated their Fourth Amendment right, made applicable to the States by the Fourteenth Amendment, to be free from unreasonable seizures.  *See* U.S. Const. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 650, 655 (1961) (incorporating the Fourth Amendment as to state actors through the Fourteenth Amendment).  That right protects people from unreasonable seizures "in the civil context as well" as the criminal.  *Soldal v. Cook Cnty.*, *Ill.*, 506 U.S. 56, 67 (1992).  The government seizes property when it "meaningful[ly] interfere[s] with an individual's possessory interests in that property." *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  The reasonableness of a seizure is the "ultimate standard under the Fourth Amendment."  *Soldal*, 506 U.S. at 71 (quotations omitted).  The permissibility of any governmental seizure is thus "judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."  *Delaware v. Prouse*, 440 U.S. 648, 654 (1979).

Here, Plaintiffs originally did not contend in opposing dismissal that paying their parking tickets counted as an unconstitutional seizure of property.  They instead argued that the Amended Complaint describes "a putative class comprising individuals who are slated to have property seized by Defendants and/or have already been deprived of property to satisfy illegal duplicative parking tickets."  Opposition at 28.  These unnamed people, in other words, have suffered or will suffer unconstitutional seizures, including garnishing wages, liens on real property, and retraining bank accounts, for failing to pay their parking tickets.  Thus, in Plaintiffs' view, "absent

intervention by this Court, Defendants will continue to seize property from putative class members with unpaid duplicative parking tickets." *Id.*

That argument smacks a jurisdictional wall: standing. To have standing to bring a claim, "a plaintiff must show (i) that *he* suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (emphasis added) (citation omitted). Yet Plaintiffs admit that they have not suffered the harm alleged in this claim: they have both paid their two tickets and never had the government seize property for failing to pay the parking tickets. *See* Am. Complaint ¶¶ 19, 29. Nor will they experience harm in the future in connection with the two tickets they both received, as the fines associated with those tickets have been satisfied. *See id.* And the fact that Plaintiffs brought this case as a putative class action does not change whether Plaintiffs have standing: "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016), *as revised* (May 24, 2016) (quotations omitted).

In response to the Court's order for supplemental briefing on this standing issue, Plaintiffs changed how they frame their Fourth Amendment claim. Plaintiffs now claim that the ALJ's orders required Plaintiffs to pay their parking tickets, which counts as an unconstitutional seizure. *See* Dkt. 45 at 2. Yet Plaintiffs cite no authority establishing that these orders count as a seizure. In fact, Plaintiffs "concede [that] there is not a large amount of case law addressing seizures in the context of civil penalties paid intentionally yet involuntarily to satisfy actual or imminent legal proceedings accompanied by threats of more severe penalties in the event of non-compliance." *Id.*

That dearth of caselaw makes sense.  Issuing a parking ticket does not even count as a Fourth Amendment seizure.  *See Burg v. Gosselin*, 591 F.3d 95, 96 (2d Cir. 2010) ("[A] pre-arraignment, non-felony summons does not constitute a Fourth Amendment seizure."); *DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999) ("Plaintiff cannot claim issuance of the traffic ticket effected a 'seizure.'").  Otherwise, "every traffic ticket and jury summons" would turn "into a potential Section 1983 claim."  *Burg*, 591 F.3d at 100 (quoting *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 642 (7th Cir. 2008)).  And seizing property for failing to pay a parking ticket does not count as an unconstitutional seizure: "Courts have held that the towing and impoundment of vehicles [when a plaintiff failed to pay his parking tickets] is reasonable under the Fourth Amendment."  *Tsinberg*, 2021 WL 1146942, at *10; *accord Shibeshi*, 2011 WL 13176091, at *2; *Yu Juan Sheng*, 2009 WL 6871132, at *8; *Rackley*, 186 F. Supp. 2d at 478-79.  It therefore follows that it would not violate Plaintiffs' Fourth Amendment rights for them to decide to pay their parking tickets after the ALJs found them guilty of violating the parking laws.

### 3.  Eighth Amendment Excessive Fines

Plaintiffs next contend that Defendants violated their Eighth Amendment right against excessive fines.  *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."); *see also Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) ("The Excessive Fines Clause is . . . incorporated by the Due Process Clause of the Fourteenth Amendment.").  Plaintiffs claim that even though the $95 fines imposed for a single ticket may not be excessive, the cumulative nature of the tickets violated their rights.  Opposition at 29-32.

In assessing this type of claim, courts perform a "two-step inquiry for determining whether a financial penalty is excessive under the Eighth Amendment."  *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016).  First, a court must "determine whether the Excessive Fines Clause applies

at all." *Id.* at 109 (citing *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).  That question

turns on whether the forfeiture at issue "may be characterized, at least in part, as 'punitive.'" *Id.*

(quoting *Bajakajian*, 524 U.S. at 327-28).  Second, a court must "determine whether the challenged

forfeiture is unconstitutionally excessive." *Id.* (citing *Bajakajian*, 524 U.S. at 334).  A fine is

unconstitutionally excessive "if it is grossly disproportional to the gravity of a defendant's

offense." *Id.* at 110 (quoting *Bajakajian*, 524 U.S. at 334).

For the first factor, Defendants do not contest that the Excessive Fines Clause applies to

the case.  The Court therefore assumes without deciding that the Clause applies here.[7]  It is thus

the second factor that decides this issue.

To determine whether Plaintiffs' tickets count as grossly disproportional, the Court must

consider:

> (1) the essence of the crime of the defendant and its relation to other criminal
> activity, (2) whether the defendant fits into the class of persons for whom the statute
> was principally designed, (3) the maximum sentence and fine that could have been
> imposed, and (4) the nature of the harm caused by the defendant's conduct.

*Viloski*, 814 F.3d at 110 (citation omitted).  Besides these four factors, "courts may consider . . .

whether the forfeiture would deprive the defendant of his livelihood, *i.e.,* his future ability to earn

---

[7] The Second Circuit has yet to resolve this question.  Since the Supreme Court in *Timbs* held that the Excessive Fines Clause applies to the states, some courts have determined that the Clause applies to municipal traffic and parking fines.  *See, e.g.*, *Pimentel v. City of Los Angeles*, 974 F.3d 917, 920 (9th Cir. 2020) (recognizing "that the Excessive Fines Clause applies to municipal parking fines"); *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 198-99 (S.D.N.Y. 2019) (finding that the plaintiff had "plausibly alleged that the disputed [tolling] fees were . . . subject to scrutiny under the excessive fines clause"); *Ese A. O'Diah v. TBTA-Triborough Bridge & Tunnel Auth.*, No. 19 Civ. 7586 (VSB), 2021 WL 2581446, at *5 (S.D.N.Y. June 23, 2021) (holding that the tolling fees at issue "are clearly punitive and therefore subject to the Excessive Fines Clause"); *but see Pimentel*, 974 F.3d at 925 (Bennett, J., concurring) (arguing that the Excessive Fines Clause "should [not] routinely apply to parking meter violations").  Because the parties assume that the Excessive Fines Clause applies and that determination does not affect the Court's decision, the Court has no reason to opine on the issue.

a living." *Id.* at 111 (quotations omitted). In applying these factors, the Court remains "mindful of the Supreme Court's admonition that 'judgments about the appropriate punishment for an offense belong in the first instance to the legislature.'" *Id.* at 112 (quoting *Bajakajian*, 524 U.S. at 336).

Here, Plaintiffs have failed to plausibly allege that Defendants imposed grossly disproportional fines compared to their parking offenses. Torres received two $95 parking tickets and a $10 penalty for the second ticket. Am. Complaint ¶ 20. And Kalra received two $115 parking tickets, along with a $10 penalty. *Id.* ¶ 29. Plaintiffs do not contest that the individual tickets violated the Excessive Fines Clause. Opposition at 29-30. Nor could they. Plaintiffs violated New York City's parking laws and were given tickets within what the law permitted. Although Plaintiffs' "culpability is low because the underlying parking violation is minor," a $95 and $115 fine are not grossly disproportional to an illegal parking violation. *Pimentel*, 974 F.3d at 923; *see id.* at 925 (holding that an "initial parking fine of $63 is not grossly disproportional to the underlying [parking] offense").

The analysis does not change when the collective fine from both tickets is considered. As to the first factor, Plaintiffs remained illegally parked in the same spot for a prolonged period. Plaintiffs thus continued to violate the parking laws by failing to move their cars. Said differently, Plaintiffs' culpability increased the longer their cars remained illegally parked. For similar reasons, the second factor points against Plaintiffs' claim; Plaintiffs remained illegally parked, which is the conduct the City's parking laws are meant to target. Next, "[t]he third factor, as to whether the maximum fine was imposed, does not fit well into the parking-ticket context, where there appears to be little discretion over the degree of any given penalty." *Tsinberg*, 2021 WL 1146942, at *8; *see also Pimentel*, 974 F.3d at 923.

26

Lastly, the act of someone remaining illegally parked harms the City.  Generally, illegal parking "leads to increased congestion and impedes traffic flow."  *Pimentel*, 974 F.3d at 924. Remaining illegally parked for prolonged periods exacerbates that problem.  And without the ability to give multiple tickets in a day, New York City would have difficulty encouraging people to move their cars after receiving the first ticket.  So although "a parking violation is not a serious offense," the fines from the two tickets are "not so large, either, and likely deter[] violations."  *Id.* Plaintiffs' fines thus did not violate the Excessive Fines Clause.

Plaintiffs first resist this conclusion by contending that Defendants required them to pay "above the maximum . . . fine that could have been imposed" because New York City laws permit giving only one parking ticket per day.  Opposition at 30 (quotations omitted); *see United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 n.9 (11th Cir. 1999) (noting in dicta that a "forfeiture far in excess of the statutory fine range . . . is likely to violate the Excessive Fines Clause").  But as discussed, Defendants did not violate New York City law by giving Plaintiffs multiple parking tickets on the same day.

Next, Plaintiffs seem to argue that the City's "self-proclaimed right to issue identical tickets every *twelve minutes* . . . permit[ting] . . . 121 tickets (*i.e.*, $13,915 in fines) every 24 hours" means that the City's parking ticket scheme violates the Excessive Fines Clause.  Opposition at 30-31. But this is not their argument to make.  Plaintiffs have not certified a class and thus cannot assert the rights for a plaintiff that received such a large fine.[8]  As for Plaintiffs themselves, "Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine."  *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir.

---

[8] The Court notes that Plaintiffs do not allege that New York City has ever imposed such a large fine.

1995); *see also United States v. Quinones*, 313 F.3d 49, 58 (2d Cir. 2002) (noting this point).  Yet Plaintiffs have pointed to no facts suggesting that challenges to the City's power to allegedly give these large fines are fit for the Court to decide or would cause a substantial hardship if the Court reserved judgment.  *See id.*

**B.  State Law Claims**

With Plaintiffs' federal claims dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state claims.[9]  "A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (citation omitted).  Here, the traditional "values of judicial economy, convenience, fairness, and comity" do not favor exercising jurisdiction.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  This case is at an early stage, and the Court has stayed discovery pending resolution of Defendants' motion to dismiss.  The Court therefore dismisses Plaintiffs' state law claim without prejudice to refiling in state court.

### IV.  Conclusion

For the reasons above, Plaintiffs have failed to plausibly allege that Defendants violated their federal constitutional rights, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  The Court therefore grants Defendants' motion to dismiss and dismisses Plaintiffs' federal claims with prejudice and their state law claims without prejudice.  The Court dismisses the federal law claims with prejudice because Plaintiffs have neither

---

[9]  The Amended Complaint does not establish diversity jurisdiction under 28 U.S.C. § 1332(a) because it does not plead diversity of citizenship.  *See* Am. Complaint ¶ 11.  Nor does it appear that Torres and Kalra can meet the $75,000 amount-in-controversy threshold.  *See* 28 U.S.C. § 1332(a).

suggested how they may cure the defects nor asked for leave to amend.  *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request that was not made. . . . [And] in the absence of any indication that [the plaintiff] could—or would—provide additional allegations that might lead to a different result, the District Court did not err in dismissing [the plaintiff's] claim with prejudice." (quotations and citation omitted)).

The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated: March 11, 2022
       New York, New York

_____
                JOHN P. CRONAN
             United States District Judge